## GATEWAY PRODUCE CO. v. DAVIS.
### (No. 2359.)

(Court of Civil Appeals of Texas. Texarkana.
Jan. 28, 1921. Rehearing Granted
Feb. 24, 1921.)

Master and servant ☞73(4)—Salesman quitting service under contract stipulating for "forfeit" not entitled to percentage of profits.

Under a contract stipulating that a traveling salesman should be paid for his services 50 per cent. of the net profits on sales, payable 40 per cent. as presently earned at the end of each week and 10 per cent. as earned at the end of each year's service, and providing that he should "forfeit all credits which he may have" should he leave the service before the end of the year, he was not entitled to the 10 per cent. of the profits where he voluntarily left the service before the end of the year; the term "forfeit" meaning that he should lose the right to payment of any further sum in the sense of unearned compensation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forfeit—Forfeiture.]

Appeal from Bowie County Court; J. B. Lytal, Judge.

Suit by F. E. Davis against the Gateway Produce Company. Judgment for plaintiff, and defendant appeals. Reversed, and judgment awarded for plaintiff for a smaller amount.

Wheeler & Robison, of Texarkana, for appellant.

Keeney & Dalby, of Texarkana, for appellee.

LEVY, J. This suit is by the appellee for debt, in which he claims that the amount sued for is a balance due him as a compensation for services rendered as a traveling salesman under the terms of a contract of employment made with the appellant. The appellant defends the action on the ground that the appellee voluntarily left its service before the end of the contract year, in violation of the express terms of the contract, and the 10 per cent. of the profits sued for is not recoverable.

The case was tried before the court, and judgment was entered for the appellee.

The appellee and appellant entered into a written contract stipulating that the appellee as a traveling salesman was to sell the goods of the appellant, and that the appellant was to pay him for his services a certain per cent. of the net profits of such sales. It was expressly provided that the appellee was to "forfeit all credits which he may have on our books" should he leave the service of appellant for any cause before the end of the year's service. The appellee admitted that he worked for the appellant from the date of the contract in October, 1917, until about January 1, 1918, when he voluntarily quit the work and service of appellant.

The appellant, by a proper assignment of error, insists that the appellee was not entitled under the evidence to a judgment for the compensation sued for which is the 10 per cent. of the profits. The correctness of the judgment depends upon the construction of the contract in evidence with reference to the stipulation for the compensation to be paid the appellee. The first paragraph of the contract states that appellee was to be paid as compensation for his services "fifty per cent. of the profits on all goods sold by him or shipped into his territory," after deducting from such profits all losses through uncollectable accounts. But reading the further terms of the contract in connection with the above, there is unfolded the meaning and intention of the parties as to the entire contract to be that appellee was to receive for the year's work the maximum compensation of 50 per cent. of the net profits on sales made by him or arising in his territory, payable and owing as follows: (1) 40 per cent. as presently earned "at the end of each week," and (2) 10 per cent. as earned "at the end of each year's service," upon condition that the appellee remained in the service of and sold goods for the appellant for a full year. The compensation was primarily to be a weekly wage based on 40 per cent. of the net profits of sales, and a further compensation of 10 per cent. of the yearly net profits of his sales conditioned upon the fact that appellee worked a full year. And giving the contract the above construction, which we think is the proper and reasonable one, the instant case would be essentially different from the cases relied on by appellant of Eakin v. Scott, 70 Tex. 442, 7 S. W. 777, and Ry. Co. v. Ward, 34 S. W. 328. In each of these cases the question was that of whether or not the money stipulated to be retained and forfeited was an agreement for liquidated damages or a mere penalty. In the instant case the question is that of the amount of compensation earned and payable. The term "forfeit all credits which he may have on our books," as used in the instant contract, should be taken as meaning, should lose the right to the payment of any further sum in the sense of an unearned compensation.

It appears from the argument and the briefs that the appellant deducted from the weekly compensation of appellee an account of Mr. Lawrence. which was afterwards collected, and the appellee's part of the profits thereon should have been paid to him. We find no pleadings or statement of pleadings in the transcript that seeks a recovery of this item. The only pleading or statement of pleading of appellee in the record is the orig-

inal petition claiming the alleged 10 per cent. balance in evidence. As we are bound by the record as certified, we are unable to pass on this particular item.

The judgment is reversed, and judgment here entered in favor of the appellant, with all costs.

### On Motion for Rehearing.

The motion for rehearing is granted in so far as it pertains to the recovery of the item of the Lawrence account. The oral pleadings in the county court seems to be admitted in the briefs. The appellant's brief says:

"By oral pleadings in the county court he (plaintiff) asked for $39.15 as one-half of the Lawrence account which was charged to him and afterwards collected by the appellant."

This amount the appellee should have judgment for, and it is accordingly here allowed him. The costs of appeal are taxed against appellee.